# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **SHARON COHEN** | : |
| **2605 Cranapple Ln** | : |
| **Springdale, Maryland 20774** | : |
| | : |
| **Plaintiff** | : |
| | : |
| v. | : |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY** | : |
| **600 5TH Street NW** | : |
| **Washington, D.C. 20001** | : |
| | : |
| **Defendant.** | : |

===============================

## COMPLAINT

COMES NOW Plaintiff SHARON COHEN ("Cohen") by and through undersigned counsel, Billy L. Ponds, of The Ponds Law Firm, who respectfully submits this Complaint against Washington Metropolitan Area Transit Authority ("WMATA"). In support of this Complaint, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action against WMATA to redress WMATA's deprivation of rights secured to Plaintiff pursuant to the Rehabilitation Act 29 U.S.C. § 794.

2. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, *et. seq.*, 28 U.S.C. § 1332 and 29 U.S.C. § 794(a).

3. Venue is proper in this Court as a significant number of the acts complained of herein occurred in the District of Columbia and defendant WMATA is headquartered in the District of Columbia.

## PARTIES

4. Cohen is a sixty-six (66) year old African-American female who was employed by WMATA from June 2008 until June 2020.

5. WMATA is a tri-jurisdictional government agency headquartered in the District of Columbia with the authority to sue and be sued.

## FACTS

6. At all times relevant herein WMATA received Federal financial assistance.

7. On or about June 28, 2008, Cohen commenced her employment with WMATA as a Safety Officer in the Safety Department.

8. Cohen's duties and responsibilities involved safety training and compliance work.

9. At the time Cohen was hired there was no program manager for the safety department.

10. Cohen developed the curriculum and safety training program, including Occupational Safety and Health Administration training, and was responsible for training all WMATA employees.

11. Approximately two (2) to three (3) years after commencing employment at WMATA Cohen had a workplace accident specifically when she fell from a chair during a training course.

12. As a result of the aforementioned accident Cohen injured her back, causing her extreme pain, limiting her mobility and her ability to lift heavy objects without risk of severe injury or pain.

13. Ann Murtha ("Murtha") was Cohen's supervisor at the time of the aforementioned accident.

14. In November 2010 Cohen was diagnosed with two slipped discs and spinal stenosis.

15. On August 1, 2011, Cohen underwent her first back surgery.

16. After the surgery, Cohen was still in pain, had limited mobility and her treating physicians told her not to lift heavy objects, sit or stand for extended periods.

17. After the surgery, Cohen requested a chair to sit in while teaching training courses, but Murtha denied Cohen's request.

18. After Cohen's surgery Murtha began to make derogatory comments about Cohen's physical appearance, specifically her movement and posture caused by her back condition.

19. After Cohen's surgery Murtha prohibited Cohen from teaching any training courses.

20. On or about March 5, 2012, Murtha directed Cohen to leave WMATA and take a fitness for duty evaluation.

21. Cohen was forced to take leave until she was deemed fit to perform the essential functions of her job.

22. On March 16, 2012, Cohen filed a formal Americans with Disabilities ("ADA") accommodation request, asking for, among other things, an operable drivable buggy or scooter.

23. Murtha subsequently placed Cohen on administrative leave pending a ruling from WMATA's ADA panel.

24. On April 20, 2012, Cohen sent a letter to WMATA and requested permission to return to work and perform all of her normal duties and responsibilities, including classroom instruction, with the following accommodations: a WMATA vehicle to travel to the various training class sites where Cohen needed to provide training, a buggy/scooter with a basket to transport her instruction materials to the training class sites, and a chair to sit in while teaching. and.

25. On May 16, 2012, Cohen completed her fitness for duty evaluation.

26. On July 31, 2012, the WMATA Medical Office subsequently determined that Cohen was fit to perform the essential functions of her job with a reasonable accommodation.

27. On July 31, 2012, the WMATA ADA panel ruled that, due to Cohen's back condition, Cohen was a qualified individual with a disability under the ADA, and that WMATA could provide her with reasonable accommodations to perform the essential functions of her job.

28. On August 6, 2012, Cohen was permitted to return to work.

29. However, upon Cohen's return to work on August 6, 2012, the reasonable accommodations she requested were not provided to her.

30. On November 7, 2012, Cohen, through counsel, submitted a formal complaint of disability discrimination and retaliation against WMATA and Murtha.

31. Despite Cohen's complaint, WMATA did not take any remedial action, Cohen was not provided with the reasonable accommodations she requested and the WMATA ADA Panel approved.

32. During this period of time, Murtha continued to directly supervise and harass Cohen.

33. In addition to the derogatory comments Murtha made regarding Cohen's movement and appearance, Murtha began to openly mock Cohen in front of other employees, in particular new hires.

34. Murtha also began to delay Cohen from being able to enroll in safety training programs that were essential for Cohen to timely complete in order for Cohen to retain her position.

35. Murtha did not delay any other employees from taking essential training courses.

36. Cohen also requested permission to attend a number of professional development courses, but Murtha denied her requests.

37. Numerous other employees who were similarly situated to Cohen were permitted to attend professional development courses around this timeframe that were paid for by WMATA .

38. In April 2014 Cohen underwent an emergency back surgery to insert two (2) steel rods in her back due to the fact that some of the discs in her spine had significantly deteriorated, causing her to collapse.

39. Upon information and belief, Murtha attempted to prevent Cohen from taking FMLA leave for the surgery.

40. Cohen was eventually able to take leave, her surgery was successful and she returned to work after four (4) months.

41. After Cohen returned to work she began using a walker for assistance.

42. In 2014 or 2015 Murtha had Cohen removed from the Safety Department and transferred to the Quality Assurance Department.

43. Cohen met or exceeded all performance goals from the time she was hired in 2008 up to the time she was transferred to the Quality Assurance Department.

44. Cohen was able to perform all of her essential duties as a Safety Officer at the time she was transferred.

45. There was no legitimate, non-discriminatory reason for Cohen's transfer from the Safety Department to the Quality Assurance Department.

46. At or about one (1) year after Cohen was transferred to the Quality Assurance Department WMATA had a reorganization and Cohen was transferred back to the Safety Department in the Industrial Hygiene section.

47. In the Industrial Hygiene section, Cohen was directly supervised by Francine James ("James").

48. The Industrial Hygiene section had two other employees who also directly reported to James , Corey Bender ("Bender") and Bethany Flaum ("Flaum").

49. Neither Bender nor Flaum had a disability at any time relevant herein.

50. At or about November 2016 Cohen's office was transferred to a bus garage.

51. The aforementioned transfer significantly increased her commute, which was problematic due to the fact that her treating physician had instructed her to not engage in any long-distance driving.

52. The aforementioned garage was infested with vermin and Cohen's office area contained hazardous fumes.

53. At all relevant times herein, Cohen also suffered from Type II Diabetes, Hypertension, and Asthma.

54. Cohen requested to have her office location changed due to the impact that the transfer had on her health and well-being.

55. Cohen's request to have her office location changed was initially denied.

56. After Cohen's initial request to change her office location, but before that request was granted, Cohen had an asthma attack at work.

57. In January 2017 WMATA eventually granted Cohen's request and transferred her to WMATA headquarters.

58. At all relevant times herein, Cohen had a permanent handicapped parking tag due to her disability, specifically her back condition.

59. At all relevant times herein, WMATA was aware that Cohen had a handicapped parking tag.

60. After being transferred to WMATA headquarters Cohen was no longer able to park in a designated handicapped parking space because WMATA headquarters had insufficient designated handicapped parking spaces.

61. Cohen frequently had to drive for significant periods of time to find a parking space and then had to walk a significant distance to her office.

62. Cohen began utilizing a suitcase with wheels in lieu of a cane or walker to assist her movement.

63. Cohen made the aforementioned change due to the negative treatment and reactions she received from her coworkers.

64. Cohen still carried, and was forced to occasionally use, a collapsible cane.

65. Cohen would also often be wrongfully issued parking citations.

66. Cohen requested leave to contest the parking citations she received, and her requests were denied.

67. Employees who were similarly situated to Cohen were permitted leave to contest any parking citations they received.

68. Cohen's vehicle would also often be intentionally blocked in by other WMATA employees' vehicles, which prevented her from being able to drive home. This required Cohen to pay for a taxi or Uber home and then back to work the next morning.

69. Cohen informed WMATA of the issues she was experiencing with parking, but no remedial action was taken.

70. Due to the physical strain that this caused Cohen, she requested an assigned parking space, which was denied.

71. On or about September 10, 2018, Cohen made a formal request for an accommodation for an assigned parking space close to her office, but on or about September 11, 2018, that request was denied.

72. On or about September 10, 2018, Cohen also made a formal request for an accommodation, based on advice from her treating physician, to have a desk that could be raised and lowered. Cohen's request was denied shortly thereafter.

73. The desk accommodation was necessary due to the fact that sitting or standing for extended periods of time would cause Cohen's back to tense up, causing her significant pain and further limiting her mobility.

74. Upon information and belief, other WMATA employees similarly-situated to Cohen were provided a desk that could be raised and lowered.

75. James also harassed Cohen due to her disability.

76. While James supervised Cohen she would make derogatory comments about Cohen's disabilities and utility to the company.

77. James would assign work to Cohen that was unnecessary and did not fit Cohen's abilities.

78. Cohen would often receive assignments from other managers who were unable to meet a deadline. These assignments were not normal or typical for the Safety Department, particularly the Industrial Hygiene section where Cohen worked.

79. Employees who were similarly situated to Cohen, including but not limited to Bender and Flaum, were not given assignments that were outside of their skillset, unnecessary, or atypical for the Safety Department.

80. Cohen requested to work from home on numerous occasions, including during inclement weather, but her requests were consistently denied by James.

81. Cohen continued to request an accommodation to work from home until the COVID-19 pandemic became serious in the region at or about mid-March 2020.

82. Employees who were similarly situated to Cohen, including but not limited to Bender and Flaum, were permitted to work from home at all relevant times herein.

83. In 2019 and 2020 Cohen would often be required to work in excess of forty (40) hours per week.

84. On a number of occasions, Cohen requested a decrease of the number of hours that she worked the next day or week to make up for the excess time that she worked.

85. James denied all of Cohen's overtime adjustment requests.

86. Bender and Flaum also would work in excess of forty (40) hours per week, and each time James would allow them to decrease the number of hours that they worked the next day or week to make up for the excess time that they worked.

87. Cohen, therefore, was required to work significantly more hours than employees who were similarly-situated, but Cohen was not provided additional compensation for these extra hours.

88. In 2019, James began to give Cohen assignments that were well beyond her skill set, such as detailed information technology tasks.

89. Cohen attempted to take information technology training offered by WMATA to provide her with the necessary skills to complete these assignments.

90. Cohen was unable to take courses offered by WMATA due to the fact that they were either not offered, or she was told that there were no open seats in the classes.

91. Cohen requested to attend comparable classes at a nearby community college, but this request was denied by James.

92. Employees who are similarly situated to Cohen, including but not limited to Bender and Flaum, were permitted to take training outside of WMATA at WMATA's expense.

93. Without the training Cohen had requested she was unable to complete a number of complex assignments, such as database mergers.

94. In 2019 and 2020, Cohen was also provided with substandard and defective equipment.

95. In the Summer of 2019, Cohen's computer crashed, she was without a computer for nearly three (3) weeks and lost nearly all of the progress that she had made on her current assignments.

96. James screamed at Cohen, berated her, and told Cohen that she still expected Cohen to timely complete her assignments, despite the fact that Cohen had no computer.

97. James was almost always overly critical of Cohen's work, and would often request edits that James later withdrew.

98. James did not have a background in Industrial Hygiene and upon information and belief lacked the foundational knowledge necessary to supervise the section.

99. James requested that Cohen draft an Industrial Hygiene reference manual.

100. Cohen drafted an Industrial Hygiene manual and submitted it to James, who subsequently lost the manual.

101. Cohen was forced to rewrite a significant portion of the Industrial Hygiene manual and again submitted it to James.

102. In December 2019 or January 2020, Cohen applied for a position as a bus safety manager.

103. Cohen was qualified for the aforementioned bus safety manager position and she could have performed all duties with or without a reasonable accommodation.

104. Cohen was not selected for the position.

105. Upon information and belief, there was no legitimate, non-discriminatory reason Cohen was not selected for the bus safety manager position.

106. Cohen was not selected solely due to her disability.

107. In March 2020 many WMATA workers were transitioned to working fully remote due to COVID-19.

108. WMATA provided Cohen with a laptop but it lacked the necessary applications and permissions to access crucial databases and perform other necessary functions for Cohen to complete her work.

109. Cohen attempted to resolve these issues with WMATA's information technology department and kept James apprised of the issues.

110. James berated Cohen and demanded that she still timely meet all deadlines.

111. In early February 2020, Cohen filed an internal EEO complaint against James and WMATA for the disability discrimination she was experiencing.

112. On February 21, 2020, James issued Cohen a written warning, that included multiple false allegations, including the allegation that Cohen's performance was deficient.

113. James' written warning also advised Cohen that she needed to demonstrate improvement or face discipline up to and including termination.

114. Prior to the February 21, 2020, written warning, Cohen had never received any indication from WMATA that her performance was deficient in any way.

115. After Cohen filed her internal EEO complaint, James' treatment towards Cohen became worse, she would more frequently scream at Cohen, make derogatory comments to Cohen and act in a condescending manner towards Cohen.

116. In late May or early June 2020, James advised Cohen that she had the option of being terminated or resigning.

117. Given the alternative of termination, Cohen attempted to resign to improve her job prospects upon re-entry into the job market, but James ignored her resignation request.

118. On June 1, 2020, WMATA terminated Cohen's employment.

## COUNT I

### DISPARATE TREATMENT DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

119. Plaintiff incorporates by reference paragraphs 1 through 118 as if fully set forth herein.

120. At all times relevant herein, Cohen was an individual with a qualified disability under the Rehabilitation Act, specifically, her back injuries substantially limited major life activities.

121. At all times relevant herein, WMATA and all WMATA employees referenced herein were aware of Cohen's disability.

122. Cohen was denied a number of employment benefits that were provided to similarly situated employees, including but not limited to, overtime adjustments, the ability to work from home, leave, and training.

123. Cohen was required to work more hours than similarly situated employees but was not compensated for this additional work.

124. Cohen was assigned work that was outside her skillset and unnecessary, whereas similarly situated employees were not.

125. Cohen was provided with defective equipment, and when the equipment would not function, she was not provided with functioning equipment to complete her job functions.

126. Cohen was eventually terminated due to her disability.

127. Cohen applied for a bus safety manager position that she was qualified for and she could have performed all duties with or without a reasonable accommodation.

128. Cohen was not selected for the bus safety manager position.

129. WMATA unlawfully discriminated against Cohen based on her disability, and Cohen's disability was the but-for cause of all conducted complained of herein.

130. WMATA did not have a legitimate, non-discriminatory reason for any of the conduct complained of herein.

131. All of the relevant conduct complained of herein occurred on September 10, 2018, or sometime thereafter.

132. WMATA's conduct alleged herein was done with malice and reckless disregard for the rights of all WMATA employees including Cohen.

133. WMATA's conduct herein caused Cohen to be harmed physically and economically.

134. Cohen has suffered emotional and psychological harm, has experienced loss of employment opportunities, and has been denied employment benefits, along with other compensable injuries.

135. WMATA's conduct as set forth herein gives rise to punitive damages.

## COUNT II

**FAILURE TO ACCOMMODATE IN VIOLATION OF THE REHABILITATION ACT**

136. Plaintiff incorporates by reference paragraphs 1 through 135 as if fully set forth herein.

137. At all times relevant herein, Cohen was an individual with a qualified disability under the Rehabilitation Act, specifically, her back injuries substantially limited major life activities.

138. At all times relevant herein, WMATA and all WMATA employees referenced herein, were aware of Cohen's disability.

139. Cohen could have performed all of the essential functions of her position with reasonable accommodation.

140. Cohen requested reasonable accommodations, including but not limited to, assigned parking spaces, a desk that could be automatically raised or lowered, and a scooter or buggy.

141. WMATA refused to make any accommodations for Cohen.

142. All of the relevant conduct complained of herein occurred on September 10, 2018, or sometime thereafter.

143. WMATA's conduct alleged herein was done with malice and reckless disregard for the rights of all WMATA employees including Cohen

144. WMATA's conduct herein caused Cohen to be harmed physically and economically.

145. Cohen has suffered emotional and psychological harm, has experienced loss of employment opportunities, and has been denied employment benefits, along with other compensable injuries.

146. WMATA's conduct as set forth herein gives rise to punitive damages.

## COUNT III

## RETALIATION IN VIOLATION OF THE REHABILITATION ACT

147. Plaintiff incorporates by reference paragraphs 1 through 146 as if fully set forth herein.

148. Cohen engaged in a protected activity in early February 2020 when she submitted an internal EEO complaint alleging disability discrimination, naming James as a perpetrator of the discrimination.

149. On February 21, 2020, disciplinary action was subsequently taken against Cohen.

150. There is a causal link between the protected activity in early February 2020, and the disciplinary action on February 21, 2020.

151. James' harassment towards Cohen became substantially worse after Cohen filed her internal EEO complaint.

152. On June 1, 2020, James terminated Cohen's employment with WMATA.

153. James was aware of the EEO complaint prior to taking disciplinary action on February 21, 2020, against Cohen.

154. There is a causal link between the protected activity in early February 2020, and Cohen's termination on June 1, 2020.

155. WMATA unlawfully retaliated against Cohen when they took adverse employment actions against her as set forth herein.

156. WMATA's conduct alleged herein was done with malice and reckless disregard for the rights of all WMATA employees including Cohen

157. WMATA's conduct herein caused Cohen to be harmed physically and economically.

158. Cohen has suffered emotional and psychological harm, has experienced loss of employment opportunities, and has been denied employment benefits, along with other compensable injuries.

159. WMATA's conduct as set forth herein gives rise to punitive damages.

## COUNT IV
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE REHABILITATION ACT

160. Plaintiff incorporates by reference paragraphs 1 through 159 as if set forth herein.

161. At all times relevant herein, Cohen was an individual with a qualified disability under the Rehabilitation Act, specifically, her back injuries substantially limited major life activities.

162. At all times relevant herein, WMATA and all WMATA employees referenced herein, were aware of Cohen's disability.

163. Cohen was subject to harassment by Murtha, James, and other WMATA employees as set forth herein.

164. The aforementioned harassment was due to Cohen's disability and was so severe and pervasive that it affected the terms, conditions, and privileges of Cohen's employment.

165. The harassment set forth herein began soon after Cohen first became disabled and remained continuous until Cohen's termination on June 1, 2020.

166. The harassment as set forth herein culminated in Cohen's termination on June 1, 2020.

167. WMATA's conduct alleged herein was done with malice and reckless disregard for the rights of all WMATA employees including Cohen.

168. WMATA's conduct herein caused Cohen to be harmed physically and economically.

169. Cohen has suffered emotional and psychological harm, has experienced loss of employment opportunities, and has been denied employment benefits, along with other compensable injuries.

170. WMATA's conduct as set forth herein gives rise to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against defendant WMATA as follows:

I. Re-pleads and re-allege paragraphs 1 through 170 with the same force and effect as if fully set forth herein;

II. Subject to further discovery, reserves the right to amend the Complaint;

III. That Defendant be ordered to take appropriate affirmative acts to ensure that the acts complained of herein are not engaged in again by Defendant or any of its agents;

IV. An award of compensatory damages in the amount that is to be determined just and fair;

V. An award of punitive damages in the amount that is to be determined just and fair;

    VI.    Reinstatement at WMATA at her same pay rate, with the same seniority status and benefits, in a position that Plaintiff is qualified for, along with all reasonable accommodations;

    VII.    Back pay and front pay;

    VIII.    Attorney's fees, costs, and prejudgment interest;

    IX.    Any other relief this Court deems just and fair;

## VERIFICATION

I, SHARON COHEN, hereby verify under penalty of perjury that the information contained in this Complaint is true and accurate to the best of my knowledge, recollection and belief.

Executed on  9/7/21

_Sharon Cohen_
SHARON COHEN

        Sharon Cohen
        By Counsel

        Respectfully Submitted,

        */s/ Billy L. Ponds*
        Billy L. Ponds
        Counsel for the Plaintiff
        The Ponds Law Firm
        Bar Number 379883
        1025 Connecticut Ave, N.W.
        Suite 1000
        Washington, D.C. 20036
        (202) 333-2922
        billy.ponds@pondslawfirm.com

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| SHARON COHEN | : |
| 2605 Cranapple Ln | : |
| Springdale, Maryland 20774 | : |
| | : |
| **Plaintiff** | : |
| | : |
| v. | : |
| | : |
| WASHINGTON METROPOLITAN | : |
| AREA TRANSIT AUTHORITY | : |
| 600 5ᵀᴴ Street NW | : |
| Washington, D.C. 20001 | : |
| | : |
| **Defendant.** | : |

==============================

## **JURY DEMAND**

The Plaintiff hereby requests a jury trial on all triable issues, including the amount of damages to be awarded.

                                          Sharon Cohen
                                          By Counsel

                                          Respectfully Submitted,

                                          */s/ Billy L. Ponds*
                                          Billy L. Ponds
                                          Counsel for the Plaintiff
                                          The Ponds Law Firm
                                          Bar Number 379883
                                          1025 Connecticut Ave, N.W.
                                          Suite 1000
                                          Washington, D.C. 20036
                                          (202) 333-2922
                                          billy.ponds@pondslawfirm.com